1840.

Holmes
v.
Grant.

---

## Holmes vs. Grant and another.

Where a debtor conveyed his farm to his creditor for the amount of his debt which was about the value of the farm, by an absolute deed with covenants of warranty, and the creditor gave up and discharged the securities which he held for his debt, and on the same day gave to the grantor a writing to the effect that if such grantor could find a purchaser for the farm within one year, he should be entitled to all the surplus which he could obtain for the same beyond the amount of the debt, for which it had been conveyed, and the interest thereon; *Held*, that the writing thus given was not such a defeasance of the conveyance as necessarily to constitute it a mortgage; even if it was given at the time of the execution of the deed and in pursuance of a previous agreement to that effect.

As a general rule, where a contract and conveyance are made upon a negotiation for the loan of money, a court of equity will construe the conveyance to be a mortgage whatever may be the form of the contract, if the person to whom the application for the loan is made agrees to receive back his money with legal interest, or a larger amount, within a specified time thereafter, and to re-convey the property; where it is apparent that the real transaction was a loan of money. And gross inadequacy of price is always a strong circumstance in favor of the supposition that a sale of the property was not intended.

Where a sale is made with an agreement for a repurchase within a specified time, if the consideration paid upon the sale is near the cash value of the property conveyed, the absence of any agreement on the part of the vendor to repay the purchase money, so as to make his right to re-purchase and the vendee's corresponding right to recover back his money mutual

---

(a) Affirmed, upon appeal to the court for the correction of errors, in December, 1840.

1840.

Holmes
v.
Grant.

April 7.

and reciprocal, is a strong circumstance in favor of construing the contract to be a conditional sale and not a mortgage.

THIS was an appeal from a decree of the vice chancellor of the fifth circuit, declaring an absolute deed from the complainant to the defendant M. Grant a security in the nature of a mortgage merely. The answer of the defendants on oath was waived, and the case therefore depended upon the evidence in the cause ; except so far as the facts were admitted in the answer of the defendants. Previous to the 8th of September, 1820, the complainant Marcus Holmes held the legal title to a farm in Vernon in the county of Oneida, which had before that time been conveyed to him by his father, Seth Holmes, either for his own benefit or on some secret trust for the benefit of the grantor. And he was also indebted to the defendant M. Grant, his uncle, residing in the state of Connecticut, in the sum of $4277,65, either for an indebtedness on his own account, or one which he had contracted to pay on account of his father, Seth Holmes. On the day last mentioned, the conveyance in question was given by him of the farm. That conveyance upon its face purported to be an absolute deed in fee of the farm, with covenants of warranty, and was duly acknowledged by the complainant and his wife on the day of its date ; and was recorded as a deed in the clerk's office of the county of Oneida. And at the time of the execution and delivery of the deed to him, the defendant M. Grant delivered up to the complainant the several notes and securities which he held against the latter for the debt in payment of which the farm was thus conveyed. On the same day on which the conveyance was made, M. Grant signed and delivered to the complainant a written memorandum in the words and figures following, which the vice chancellor held to operate as a defeasance of the deed ; upon the presumption that it was executed at the same time with the deed, and as a part of the same agreement. " Know ye that I do hereby authorize Marcus Holmes to make a sale of the farm that Seth Holmes, Esq. now lives on, if he does find a purchaser within one

year from this date he the said Marcus shall be entitled to what he may get over and above the sum of $4277,65, with interest on the same until the time he may make the sale; but if he should not make sale of the premises, he is not entitled to the improvement of said farm. Vernon, Sept. 8th, 1820. Matthew Grant." The complainant alleged in his bill that this instrument was executed simultaneously with the deed, and was intended by the parties as a defeasance thereof. But the defendant M. Grant in his answer, which was put in under oath although his oath was waived by the bill, denied that there was any negotiation for a mortgage or a defeasible deed of the premises, or that upon the executing of a deed he agreed that he would give back to the complainant a writing to re-convey or give up the farm, upon payment of the debt for the satisfaction of which the deed was to be given. On the contrary, he alleged that the conveyance was made to him, by the complainant and his wife, for the express purpose of vesting the absolute title to the farm in him as the grantee, and in that way of paying, extinguishing and satisfying the debts owing by the complainant and his father. He also denied that the writing which was claimed to be a defeasance was made at the time of the execution of the deed; but said that after the execution and delivery of the deed, and after he had become both at law and in equity the lawful owner of the farm in fee simple without any let or condition, he stated in the presence of several persons besides the complainant, that he would rather have the money than the land, as he resided in another state and did not want the land; and then told the complainant if he could find a purchaser who would pay for the farm more than the amount due him, and for ⬤ payment of which he had taken the conveyance, he would sell the farm to such purchaser and let the complainant have the overplus; that although such offer was perfectly gratuitous, he was sincere in making it at that time. The defendant further stated that he had no recollection of having given the complainant the writing as stated in the bill, and that if he ever did give it, the

same was made after such offer, and solely and simply to put that offer in writing as a memorandum thereof.

The following opinion was delivered by the vice chancellor as the ground of the decree appealed from.

DENIO, V. C. The bill seeks to redeem a farm situated in Vernon, from an alleged mortgage incumbrance resulting from an absolute conveyance made by the complainant to the defendant Matthew Grant, in September, 1820, and an instrument executed by Matthew Grant to the complainant, bearing the same date with the deed, which is claimed to be a defeasance.

The answer insists that the transaction was a purchase and not a mortgage, but as the oath to the answer was waived by the complainant, such answer is not evidence; and these particular allegations therefore do not seem to be material, further than to shew that an issue is taken to the complainant's allegation in regard to the character of the transaction. (*Rule* 40. 2 *R. S.* 175, § 44.) It was indeed made a question upon the argument whether, notwithstanding the late statute and the rules made in pursuance of it, the answer if in fact put in on oath and suffered to remain in that shape without objection by the complainant, is not evidence for the defendant. It is argued that it is optional with the defendant whether he will accept the waiver or not, and that if he declines to do so, and swears to his answer, it has the same force as matter of evidence as heretofore.

The inconvenience which led to the adoption of the statutory provision in question doubtless was that, by the former practice, where the complainant proceeded in this court on account of the equitable nature of his claim, and not from a want of evidence leading him to seek a discovery from the defendant; if his adversary was hardy enough to put in a denial of the facts on oath, he was obliged in addition to proof which would otherwise be satisfactory, to produce evidence to overcome that furnished by the an-

swer. And thus, if his case depended on the testimony of a single witness, however disinterested and credible, he was liable to be defeated by the oath of his interested opponent ; without the right of balancing it with his own. The obvious remedy was to enable the complainant to dispense with the defendent's oath, where he deemed a discovery unnecessary. And yet if the argument addressed to me on this point is well founded, it is at the election of the defendant whether in a given case the old rule shall still prevail. To my mind it is clear that the act does not admit of this construction. I should infer from the 37th rule which is cited by the defendant, that the chancellor did not consider the effect of an answer on oath changed where it was to be used on a motion to dissolve an injunction in a common case ; and hence the provision of that rule allowing the plaintiff to fortify himself by the affidavits of witnesses attached to his bill, and then by receiving the defendant's oath, to make the question on the motion to dissolve the injunction, though the answer should be put in on oath, one to be decided upon the whole evidence and not according to the rule which requires the injunction to be dissolved where the whole equity is denied. I see no necessity for excepting, or moving to take the answer off the file. The defendant is not by the statute prohibited from answering on oath ; but the provision is that the oath shall not avail him on the hearing. The answer is regularly put in. In a case thus circumstanced, and where a replication is put in, the pleadings are to be looked into to ascertain what matters are put in issue ; and as to those, and also as to any matters alleged and not met by the answer, they must be solved by the testimony, and the onus probandi rests on the plaintiff.

In examining this case upon these principles, it appears to be satisfactorily established, that on the occasion of giving the deed for the premises in question the complainant was indebted to the defendant M. Grant in the sum of $4277,-65 ; a portion of which, it is probable, had been the debt of the complainant's father, which the complainant on that

1840.

Holmes
v.
Grant.

occasion assumed ; and that this debt was arranged by the execution of the conveyance of the farm. On the same day the defendant M. Grant executed under his hand without seal a writing, agreeing that if the complainant should find a purchaser for the farm, within one year, he should be entitled to the balance which the farm should sell for above the sum before mentioned with interest. The instrument declares that if the complainant should not make sale of the premises, he should not be entitled to the improvement of them ; leaving it to be inferred that if he did sell within the year, he and not the defendant should receive the avails of the intermediate occupation of the farm. It is a material inquiry whether this writing was made at the same time with the execution of the conveyance. For although a defeasance strictly so called, executed after a conveyance absolute in its terms, would be valid and would relate to the time of the execution of the first conveyance, (4 *Kent's Com.* 141,) such an agreement as the one in question, which does not purport to be a defeasance but a distinct and independent contract, might not have the same retrospective effect.

It appears from the evidence that the defendant resided in Connecticut, and when the conveyance was executed came to this county ; and that the business was transacted at the house on the premises, occupied by the complainant's father. The dates show that the deed and agreement were executed in the same day. It also appears that the person who drew the agreement, and who is since deceased, is a subscribing witness to the deed ; and that at the time it was executed, he took the acknowledgment of its execution as a commissioner. These facts raise a presumption, which can only be overthrown by clear proof to the contrary, that both instruments were executed on the same occasion and were parcel of the same transaction ; and I do not think that the testimony of H. N. Grant furnishes such satisfactory proof. He came up from Connecticut with his father, M. Grant, and was present at the execution of the deed and was one of the subscribing witnesses ;

and he testifies to certain declarations which are said to be inconsistent with the idea that the agreement was cotemporaneous with the deed. It should be remarked that the transaction was one of fourteen years' standing, and that the witness was then a lad of twenty years old. He admits that he was not present at the negotiations which led to the signing of the conveyance, and is therefore unable to say whether or not the substance of this agreement was embraced in the bargain made before the writings were drawn. He neither saw nor heard any think/ about the written agreement. But he professes to recollect that after the deed was executed, and after the defendant had taken it into his hands, the defendant said to the complainant that he did not want the land, and that if the complainant would sell it within a year, he should have what he could get over the amount of the price which the defendant had given ; and that he, the witness, left the room without hearing any thing further which passed. Without imputing any thing intentionally wrong to the witness, this does not seem to me very probable. It is much more likely that such a conversation should have preceded than followed the execution of the deed. And in my judgment very little reliance can be placed upon the recollection of the witness as to particular expressions, or the order in which they were uttered considered in reference to other transactions, at this distance of time, when there was no circumstance tending to impress them upon his memory ; and when he could then have known nothing of the principle upon which the order of the conversation is now deemed to be important. In my mind, this testimony does not in the least diminish the force of the presumption arising from the other circumstances, to which I have adverted to show that these papers were executed on the same occasion. The amount due the complainant was a low price for the farm, according to the testimony of a majority of the witnesses, and those who appear to me to have been the best qualified for judging. I think, from the testimony, the farm could not have been worth less than $20 per acre ;

which would bring the amount some hundreds more than the defendant's debt. The difference is not so considerable as to lay any foundation for the interference of this court on the ground of fraud. But I think it adds some force to the presumption that the owner would not willingly have parted with it absolutely at the price mentioned; and that the defendant would not have been the first to propose that the complainant should retain the right to redeem, or to re-purchase.

For the reasons already mentioned, I have not regarded as of any weight the declaration, imputed to the complainant, that the defendant had got his pay. If the expression was in truth used, in regard to which there is no certainty, it would prove nothing more than that the defendant supposed that such an arrangement as he had made might well enough be called a payment of the demand; as in some sense it might. It was in the evening of the day of the execution of the papers that the expression is said to have been used, and in all probability after the agreement had been given. No parol declarations, therefore, could control the effect of the arrangement which was then wholly in writing.

Assuming it to be established that the complainant executed the agreement at the time he received the deed, it is well settled that they must be construed together; and that the whole transaction amounts to a mortgage, in terms redeemable in one year, upon the payment of the amount of the debt and the interest. No principle rests upon better authority in this court, than that the giving of the absolute deed on account of a present loan, or a precedent debt, with a concurrent agreement in writing, or by parol, for a redemption at any future time upon payment of the debt, is a mortgage. (*Strong* v. *Stewart*, 4 *John. Ch. R.* 167. *Henry* v. *Davis*, 7 *Idem*, 40. 2 *Cowen's Rep.* 324, *S. C. Rock* v. *Cozine*, 9 *Wend. Rep.* 227. *Slee* v. *The Manhattan Co.*, 1 *Paige's Rep.* 48.)

I am far from thinking that the parties to this transaction supposed that it was a mortgage interest which was

created. They, I am satisfied, supposed that the agreement was to be construed according to its terms ; and that if the condition was not performed within the year, the defendant's estate would become absolute to all intents. It is only in consequence of the peculiar principles which courts have now for a long time applied to this species of contract that such is not the case. The natural import of the terms used in an ordinary indenture of mortgage, import that upon non-payment the estate belongs absolutely to the mortgagee ; but the maxim of this court is, that the estate cannot be a mortgage at one time and an absolute purchase at another. If the conveyance be a mortgage in the beginning, the right of redemption is inseparable from it. Even an express covenant inserted in the indenture, that in case the redemption should not be made within a given time the estate should be thereafter irredeemable, would not destroy the equity of redemption, but it would continue to exist until it should be foreclosed. (*Clark* v. *Henry*, 2 *Cowen's Rep.* 327.) This rule is indispensible to guard the necessitous and improvident against the cupidity of the designing ; and although, in a particular case, we may not see all the mischief exemplified for which the rule was intended, the principle being general must still be applied.

I do not appreciate the force of the argument, that because the notes were given up, the debt was extinguished. For the purpose of regulating the amount to be paid on the redemption the debt was to be kept on foot, and the amount is specified in the agreement. It is not essential that the personal remedy against the mortgagor should be preserved. There is a debt *quoad* the redemption, but not in respect to the personal remedy.

The letters which passed between the parties and between the defendant and Seth W. Holmes, do not seem to me very material upon this part of the case. The defendant, in one written by him in December, 1833, seems disposed to consent to a redemption. But whether he supposed himself bound to do so or not does not distinctly appear ; though I should infer from some expressions in it,

that he considered the farm absolutely his. Such seems to have been the complainant's views of the matter in the letter written by him ; but I have already stated that the parties were obviously ignorant of the light in which the transaction is regarded in equity. The possession is not inconsistent with the idea of a mortgage payable in one year. The farm was occupied under the defendant for the first year, but in case of redemption the defendant did not expect to receive, and was not to receive the profits of the occupation. It is probable that the complainant held the title for the farm in trust altogether, or in part for his father, but this does not affect the question between these parties. The trustee, for all the purposes of this suit, sufficiently represents the beneficial owners. (*Van Vechten* v. *Terry*, 2 *Johns. Ch. Rep.* 197.) I shall accordingly declare that the defendant holds only the interest of a mortgagee in the premises, and that the complainant is entitled to redeem.

The defendant G. Grant has not shown enough to entitle him to claim the protection due to a bona fide purchaser without notice. He has not shown that he has either paid or engaged to pay any thing to the other defendant upon his purchase. The decree will accordingly declare his title to the premises to be subject to the complainant's equity of redemption. (*Dickinson* v. *Tillinghast*, 4 *Paige's Rep.* 215.)

In settling the principles upon which the account is to be taken, I have had regard to the peculiar features of this case. Though by the construction which equity puts upon the act of these parties this conveyance is decreed to be a mortgage, the parties have, during a considerable period, regarded the defendant as the owner of the estate. He has been supposed so to treat the premises, and in such a case he should be paid for improvements which in the case of an acknowledged mortgage he would not be permitted to claim. A mortgagee in possession is sometimes refused an allowance for expensive improvements ; on the ground that he might, if allowed to improve at his pleasure and at

the expense of the mortgagor, embarrass the equity of redemption. That principle cannot apply to a case circumstanced like this. (*Moore* v. *Cable*, 1 *Johns. Ch. R.* 385. 4 *Kent's Comm.* 166, 167, *and note. Benedict* v. *Gillman*, 4 *Paige's Rep.* 58.) I shall accordingly direct a master to compute the principal and interest upon the debt to M. Grant mentioned in the pleadings and proofs, and that he charge him with the net amount of rents and profits received by him and by G. Grant; and that he allow for the expense of repairs, and for the permanent improvements upon the premises, and also for the interest paid by the defendants upon the prior mortgage mentioned in the pleadings and proofs; and that if necessary he make annual rests for the purpose of applying any excess beyond the interest received by the defendants towards principal, but not for the purpose of charging the complainant with compound interest.

The extent to which the mortgage has been satisfied ought to have an influence upon the question of costs. That question therefore and all others not herein adjusted are reserved.

*P. Gridley*, for the appellant. The evidence does not show that the deed and agreement were simultaneously executed. Even if simultaneously executed, the transaction amounts only to an absolute sale with a power to sell, and not to a mortgage. Or rather the agreement was a conditional power to make a sale, provided it should be done in one year; and the condition not having been performed within the time specified could not be enforced afterwards. (2 *Jac. L. Dic.* 229, 230. 1 *Ves.* 405. 3 *Ball & Beat.* 279. 19 *Ves.* 412. 7 *Ves. sen.* 406. 1 *Powell on Mort.* 138. *Co. Litt.* 205, *a. note.*) The whole evidence must be resorted to to ascertain the intention of the parties. (4 *Kent's Comm.* 2d ed. *p.* 142. 1 *Paige's Rep.* 56.) The parties intended that the deed should operate as a payment of the debt, and as a present conveyance of the farm. A mortgage is an instrument to secure a debt, not to pay it.

The debt is the principal and the mortgage the incident. (9 *Cowen*, 369. 7 *Id*. 662. 2 *Id*. 195. 5 *Id*. 202. 2 *Ball & Beat*. 272. 7 *Cranch*, 218. 2 *Edw. Rep*. 144. 4 *Kent's Comm*. 2d ed. p. 144.) Such an agreement as the one given by the defendant, M. Grant, to the complainant does not turn a deed into a mortgage. (2 *Edw. Rep*. 143. 4 *Kent's Comm*. 142. 15 *Viner's Abr*. 468, *pl*. 8, *tit. Mortgage & Redemption*. 1 *Vernon*, 268. *Cas. Tem. Talbot*, 61. 2 *Sch. & Leff*. 293. 19 *Ves*. 412. 4 *Brown's Par. Cases*, 142. 1 *Powell on Mort*. 133, *a. Boston ed. of* 1828. 2 *Mass. Rep*. 294.) The surrender of the securities is evidence that the debt secured by them was paid. (*Arnold* v. *Camp*, 12 *Johns. Rep*. 411.) Possession followed the deed. This of itself is almost decisive against the idea that the deed is a mortgage. The proof to convert a deed into a mortgage should be affirmative, clear and decisive. (1 *Johns. Ch. Rep*. 598.) The agreement at most was only a contract for a re-purchase. (4 *Kent's Comm*. 142. *Ham. Ch. Dig*. 363. 2 *Ball & Beat*. 279.)

*E. Smith Lee*, for the respondent. The deed and the agreement operated as a mortgage and not as an absolute sale of the premises. Although separate instruments they are to be construed as if they were incorporated in one instrument. The facts show that the parties intended the deed should be a mortgage. The deed and agreement are of even date. They were given as a security for the debt; not in payment of it. (7 *Johns. Ch. Rep*. 42. 2 *Cowen*, 324.) The object was to give the grantor a right to redeem. (4 *Johns. Ch. Rep*. 167. 9 *Wendell*, 227. 1 *Paige's Rep*. 48.) If the deed was a mortgage the time limited by the agreement for payment was immaterial; for once a mortgage always a mortgage. (2 *Cowen*, 331. 7 *Johns. Ch. Rep*. 43. 4 *Paige's Rep*. 227.)

THE CHANCELLOR. I think the vice chancellor erred in this case in the conclusion at which he arrived, that the deed and the written agreement which he held to be a de-

feasance thereof were made simultaneously and constituted but one agreement. If the latter was in fact a defeasance, so that it could not have any sensible interpretation except upon the presumption that it must have been intended to control the absolute terms of the deed itself, and both instruments bore date on the same day, the legal presumption would unquestionably be that they were but different parts of the same agreement, and were intended to take effect in connection with each other. Here, however, the instrument claimed to be a defeasance was not necessarily such; but on the contrary is entirely consistent with the idea that it was a mere gratuitous offer on the part of the grantee in the deed, after he had become the owner of the farm in full payment and satisfaction of his debt, as stated in his answer. Indeed as he lived at a distance and could not well attend to the sale of this farm, which had been in some measure forced upon him, by his brother-in-law and nephew, instead of the money which he was entitled to, such an offer might very well have been made to any other person who would have taken the trouble to find a purchaser within the year. The fact that this instrument was in the hand writing of the person who took the acknowledgment of the deed is no evidence that it was drawn or agreed to be drawn before the deed became absolute. It is evident from the answer that the offer there stated must have been within a short time after the consummation of the sale. And if Mr. Gridley, who took that acknowledgment, had not yet left at the time that offer was made it was perfectly natural that Grant should have asked him to draw up this memorandum of the offer ; for the purpose of satisfying his relatives that he was sincere in his declaration that he did not want the land, and that if the complainant supposed he could sell it for more within the year he should have the benefit of the surplus. The complainant having given an absolute conveyance, and this writing not being in terms a defeasance thereof, the onus of showing that both were executed at the same time, and in pursuance of the same agreement, so as to constitute in law a

single transaction, was unquestionably thrown upon the complainant. And having waited twelve years before he filed his bill, and until Gridley who drew the writing, and who probably was the only person who could have proved the circumstances under which it was given, was dead, he should now be held to strict proof. He should not be permitted to establish this allegation of his bill by mere inference, while he deprives the defendant of the opportunity of explaining the transaction by his answer responsive to the bill.

I think, however, the defendants succeeded in disproving the allegation that this instrument was a part of the original agreement, and was executed with the deed as a condition or defeasance thereof, so far as it was possible for them to give any evidence on the subject after this lapse of time. H. N. Grant, the son of the defendant to whom the deed was given, and who with Gridley were the only subscribing witnesses to the same, proves the transaction to have taken place substantially as stated by the defendant, M. Grant, in his answer. After proving the execution and delivery of the deed, and the giving up of the notes and securities for the debts which formed the consideration of the conveyance, the witness swears his father said to the complainant, "Marcus I don't want this land. I have already more land than I want. Now Marcus if you will take this land and sell it within one year you may have all you will get over what I have paid for it, for I want the money." And his father also spoke at the same time of its being so far from home that he could not take care of it. The witness says he soon after left the room, and that he heard nothing said about this right of sale until this remark of his father; that he never heard any thing said about the deed's being a security for the debt only, or any thing else than an absolute deed; and that no other writing was executed in his presence except the deed, nor did he hear a word said about any other writing being executed. I agree with the defendants' counsel that the age of this witness, who was then 20 years

old, and the circumstances in which he was placed were such that the occurrences as to which he was called to testify would be very likely to make a stronger and more lasting impression upon his mind than perhaps at any other period of his life. This was probably his first visit to this state and possibly the first time he had been at any considerable distance from home. Every thing that occurred therefore of importance, during this journey, would be likely to be remembered by him longer than any similar occurrences at a more advanced period of life. And in so important a matter as the purchase of such a farm by his father, while they were remaining there in his uncle's family, and when he was called upon as a subscribing witness to the deed, if any thing had been said upon the subject of this transaction being a mere security for the money, and not a sale of the farm, it is hardly possible that he should have forgotten it. I think then that there is very little room to doubt that this transaction was in substance that which it is stated to have been by the defendant, M. Grant, in his sworn answer ; although the vice chancellor was right in supposing that answer was a mere pleading and not legal evidence of the fact. Such being the case, the written stipulation to give to the complainant the benefit of any sale he could make of the property, within one year, beyond the amount of the consideration of the deed and the interest thereon, ought not either at law or in equity to be construed to be a defeasance of the absolute conveyance which had been previously executed. It would indeed be permitting the complainant to take an unconscientious advantage of what was a mere act of generosity or benevolence on the part of the grantee in the deed, for the purpose of depriving him of his property. Upon this ground alone I think the decision of the vice chancellor was erroneous.

Again ; if the complainant had succeeded in showing that this instrument had been executed at the same moment, and in pursuance of a previous agreement for that purpose, I do not think the stipulation would have had the legal ef-

1840.

Holmes
v.
Grant.

fect to convert this absolute deed into a mortgage. There is frequently great difficulty in determining whether a conveyance was intended by the parties as a mortgage or mere security for money, or as a conditional sale. But as a general rule, where the contract and conveyance are made upon an application for the loan of money, this court for the purpose of preventing usury and extortion will construe it to be a mortgage, whenever the person to whom the application for the loan is made agrees to receive back the money advanced, with legal interest, or a larger amount, and to reconvey the property within a specified time thereafter, whatever may be the form of the written contract ; if it is apparent that the real transaction was a loan of money. And gross inadequacy of price is always a strong circumstance in favor of the supposition that a sale of the property was not intended. On the contrary, if the consideration paid is about the fair cash value of the property, the fact that there was no contract for the re-payment of the purchase money and interest which was binding upon the person making the conveyance, so as to make his general right to redeem as a mortgagor, and the corresponding right of the grantee to recover back his money instead of keeping the land, mutual and reciprocal, is a strong circumstance in favor of construing the contract to be a conditional sale and not a mortgage.

In this case there is nothing in the writings which were executed, or in the evidence, from which it can be inferred that the complainant even supposed he was under any legal or equitable liability to pay the debts, which previously existed against him and his father, after he had executed and delivered this deed. The notes were given up and nothing else taken in their stead ; and the complainant himself subsequently declared that the debt to his uncle was now paid—alluding to the payment thereof by the execution of this conveyance, which he now insists was a mere mortgage. I have therefore looked into the evidence of the value of the farm at that time, for the purpose of seeing whether the amount paid for this conveyance

was materially less than the cash value of the land. The witnesses vary in their estimates of what it was worth per acre in 1820 ; as it is very natural they should when speaking as to the value of property fourteen years previous to the time they were called upon to testify in relation to it ; and without having been called upon in 1820 to form any opinion on the subject. But they testify to facts which are sufficient to satisfy any one, who has witnessed the fluctuations in the money market and the rise and fall of property for the last thirty years, that those witnesses who fix its cash value in 1820 at about $18 per acre are the most likely to be correct in their opinions as to its then value. Of the eight or nine farmers who speak of the value of this farm in 1834, I believe, with a single exception, they estimate it then to be worth not more than $26 per acre ; and only one puts it as high as that. And the weight of testimony clearly is in favor of the supposition that the farm had been very much improved in its general situation, its fences, and fitness for cultivation in other respects, subsequent to 1820. It is also a well known historical fact, which must be deeply impressed upon the memory of every one who was obliged to raise money by the sale of his lands in 1820, that the price of real property in this state was lower at that time than it has been at any other period since the commencement of the late war ; that from the close of the war, the prices of produce, and with them the prices of farming lands, continued to go down until 1820, when it was almost impossible to sell at all for cash ; and that about 1821 or 1822, prices began to improve, and continued to rise until about three years since. The value of farming lands in the county of Oneida and farther west, were still further enhanced by the completion of the eastern section of the Erie canal in the fall of 1823. I think, therefore, there is very little room to doubt that the actual cash value of such lands in the town of Vernon, and other places which were peculiarly benefitted by the opening of that canal, was nearly if not quite one-third more in 1834 than it was at the time this deed was given in 1820. Ta-

king all these facts into consideration, I am entirely satisfied that the defendant did not obtain the conveyance of the farm for less than its cash value at the time that deed was given ; and that he was sincere in his declaration which he made to the complainant after the purchase, that he did not want the land. In other words, that he had rather have the money than the land at that price.

In the case of *Robinson* v. *Cropsey*, (2 *Edw. Ch. Rep.* 138,) the vice chancellor of the first circuit held an agreement to be a conditional sale and not a mortgage, although there was an express agreement that the vendor should have the privilege of redeeming the premises by the payment of a specified sum within one year, and the costs of the improvements, if any, which should be put upon the buildings in the meantime ; upon the ground that it was evident from the whole transaction that the parties intended that the grantor's indebtedness should be entirely discharged ; the debt thus relinquished, being the full value of his interest in the lands conveyed, as such value was at the time of the conveyance. And that decision of the vice chancellor was affirmed, upon appeal, in May, 1837 ; although the decision upon the appeal is not reported. The recent decision of the supreme court in the case of *Glover* v. *Payne*, (19 *Wendell*, 518,) is also an authority in favor of the principle that a mere agreement to re-convey the premises within a limited period, upon the re-payment of the consideration money, or any other sum, where there is no subsisting debt or continuing liability of the grantor for the payment of the money, either express or implied, is not sufficient to convert such a conditional sale into a mortgage.

The present case, however, is much stronger against the complainant than either of the cases alluded to ; as there is no agreement that the grantee in the deed will re-convey the premises to the grantor upon the payment of a fixed sum, or the consideration money and interest. Here was a mere proposition to the complainant to endeavor to find a purchaser for the farm, which the grantee did not wish to keep

at that price. And as a compensation for his services, and as an inducement to the complainant to exert himself to procure such a purchaser, Grant promises to give him whatever surplus he should be able to get, upon the sale. The concluding clause of the stipulation also excludes the idea that it was intended to convert the deed into a mere mortgage ; as it expressly declares that the complainant is not entitled to the improvement of the farm if he should not make a sale of the premises. That is, that he was not to have the use of the farm for the next year, unless it was sold ; but that the defendant was to be entitled to the possession and the rents and profits thereof immediately ; or probably the next spring, when we find that a man is sent to the defendant to take the farm upon shares. The subsequent correspondence also shows that it was treated by the complainant as the farm of his uncle ; although the latter, with a commendable magnanimity, appears to have tried for a year or two longer to get a beneficial sale of the farm, by which he could, if possible, get back his purchase money and interest, and save something more to give to his brother-in-law, who probably was in need.

In either view which I have taken of this case, I am satisfied the decision or decree appealed from is erroneous. It must therefore be reversed, with costs ; and the complainant's bill must be dismissed with costs.