MARGARET SWETLAND, complainant, *vs.* WILLIAM SWETLAND *et al.*, defendants.

By referring in the bill of complaint to a deed or other instrument in this wise, "as in and by said indenture, reference being thereunto had, when produced will more fully and at large appear;" the whole document referred to, is made part of the record, although not fully or accurately recited in the bill, and the complainant may, at the hearing, avail himself of such portions as are not recited, and also those portions inaccurately set forth.

In doubtful cases, Courts of Equity incline to construe a deed with a condition, to be a mortgage, and might do so where a deed and bond are concurrent instruments, in the absence of facts showing the intention of the parties to be otherwise.

To render a conveyance absolute in its terms a mortgage, it must be such at its inception. It can never become a mortgage by any subsequent act, and if it once becomes an absolute deed for a moment, it must always remain so.

Where it appears that by express agreement of the parties, a debt due from the grantor to the grantee was extinguished by the deed, or that the money paid was not advanced by way of loan, or that it is at the option of the grantor to refund or to keep the money, the transaction is a conditional sale and not a mortgage. But if the remedies of grantor and grantee are reciprocal, the former bound to repay the money, the latter to re-convey the premises, then the deed will be construed a mortgage.

The bill in this case was filed to redeem certain premises, which had been conveyed by the assignor of complainant to the defendant, William Swetland, by a deed absolute in form, but which was alleged in the bill of complaint, to be in fact, an equitable mortgage only. The complainant claimed

as the assignee of a bond, executed by the defendant some time after the execution of said deed or equitable mortgage, whereby the defendant obligated himself to re-convey to said grantor, his heirs, executors, &c., the premises, so by him conveyed or mortgaged in and by said deed, upon certain conditions set forth in the bond. The defendant having held possession of the premises for a number of years, the bill prayed an account of the rents and profits, &c., and that defendant might be decreed to release the possession to her on payment of the balance due him, if any, &c. The other material facts set up in the bill and answer, and appearing in proof are so fully stated in the opinion of the Court, that a further recital of them here is deemed unnecessary.

The Circuit Court for the County of Oakland, dismissed the complainant's bill; from which decree she appealed to this Court.

*E. Thatcher,* for complainant.

The deed of the premises from Eli to William Swetland, and the bond from William -Swetland to Eli, both of which are stated in the bill and admitted in the answers in this case, taken altogether, show clearly that the parties thereto intended the deed to operate as security for the payment of money; therefore the conveyance was in the nature of a mortgage, and the complainant, as assignee of the bond, has the right of redemption. See 4 Kent's Com., pp. 141, 142, 143; Taylor *vs.* Weld, 5 Mass. 109; Cary *vs.* Rawson, 8 Mass. 159; Wharf *vs.* Howell, 5 Bin., 409; Menude *vs.* Delaire, 2 Dess. 564; Reed *vs.* Landale, Hardin, 6; James *vs.* Morey, 2 Cow. 246; Dabney *vs.* Green, 4 Hen. & Munf. 101; Thomson *vs.* Davenport, 1 Wash. C. C. R. 125; Hughes *vs.* Edwards, 9 Wheat. 489; Vern. 183; Rice *vs.* Rice, 4 Pick. 349; Catlin *vs.* Chittenden, Brayt. 163; Page *vs.* Foster, 7 N. H. 392; 1st Hill. on Mort. 246-7, sub. 11-12; Id. 72, sub. 25; Id. 84, sub. 34; 2 Bouvier's Inst. 278-9; Flagg *vs.* Mann, 14

Pick. 467; 1 Greenl. Cruise, tit. 15, ch. 1, sec. 11, note; Campbell *vs.* Worthington, 6 Verm. 453; Baxter *vs.* Willey, 9 Ib. 280, ( *Vern.*); Wright *vs.* Betts, 13 Ib. 341, ( *Vern.*); Henry *vs.* Davis & Clark, 7 J. C. R. 40; Brown *vs.* Dewey, 1 Sandf. Ch. 65; Edwright *vs.* Harper, 3 J. J. Marsh, 353; Dey *vs.* Dunham, 2 J. R. 188; Loverving *vs.* Fogg, 18 Pick. 543; Flagg *vs.* Mann., 2 Sum. 539.

*M. E. Crofoot,* for defendants.

To convert a deed absolute on its face into a mortgage, there should be:

1. A mutual liability, that is, a legal obligation on the part of the grantor to repay the consideration money. ( *Robinson* vs. *Cropsey,* 2 *Ed. Ch. R.* 138; *same* vs. *same,* 6 *Paige,* 48; *Glover* vs. *Payn,* 19 *Wend.* 520.)

2. The consideration paid, inadequate to the value of the land. (6 *Paige,* 480; 8 *Ib.* 258; 2 *Barb. S. C.* 28.)

3. The deed and defeasance, or the facts which create defeasance, must be concurrent, and this must be shown by complainant.

If there was a moment when the deed took absolute effect, then an agreement executed subsequently will not create a defeasance, and that such agreement existed at the time of the deed the complainant must show. ( *Holmes* vs. *Grant,* 8 *Paige,* 255; 1 *Hill. on Mort.* 20, § 6; *Lund* vs. *Lund,* 1 *N. H.* 41; *Marden* vs. *Babcock,* 2 *Metc.* 103; *Harrison* vs. *Trustees, &c.,* 12 *Mass.* 463; *Kelly* vs. *Thompson,* 7 *Watts,* 401; *Freeman* vs. *Baldwin,* 13 *Ala.* 246.)

By the Court, WING, J.

It is insisted that the bill should be dismissed, because, as it is claimed, there is a material variance between the bond set forth in the bill, and the bond relied on in evidence. The consideration of the bond after specifying a definite sum of

money, which was to be paid by the obligee, provides for the payment of a sum of money to be advanced by the obligor for the obligee, but which was not at the date of the bond known to the parties. This last clause is omitted in the stating part of the bill, but we think the defendants are not entitled to a dismissal of the bill for this cause. The doctrine applicable to this point is stated in 1 Daniels Ch'y Pleading and Practice, 420. This author says that " in stating a deed or other instrument in a bill, it is usual to refer to the instrument itself in some such mode as the following, viz: ' as in and by the said indenture, reference being thereunto had, when produced, will more fully and at large appear.' The effect of such a reference is, to make the whole document referred to, part of the record. The effect of referring to it is to enable the plaintiff to rely upon every part of the instrument, and to prevent his being precluded from availing himself at the hearing of any portion, either of its recitals or operative part, which may not be inserted in the bill, or which may be inaccurately set out." The bill in this case contains. words of reference to the bond, similar to those stated in the foregoing extract.

We will now proceed to the examination of the case made by the complainant. She alleges that in the year 1837, Eli Swetland, (her deceased husband,) was seized in fee simple of the lands described in the bill, and that during that year, he conveyed them to William Swetland, by a deed absolute upon its face, but which was intended as a mortgage, to secure the payment of the sum of $747 89, which William claimed Eli owed to him; that at the time the deed was executed, it was agreed between the parties thereto, that Eli should have the possession of the land until the expiration of the term of fifteen years; and that he remained in possession thereof, until sometime in the year 1838. That after the execution of the deed, and on the 18th day of August, 1838, in consideration of the said conveyance, and at the re-

quest of Eli, William executed and delivered to him the bond set forth in the bill. The execution of the deed and the bond are admitted in the answers, but all the other allegations of the bill, and especially those we have recited, are explicitly denied. The complainant has not introduced any evidence besides that furnished by the deed and the bond.

In giving a history of the transaction between William and Eli, the complainant does not set forth the circumstances which led to the execution of the deed, further than to state that the deed was executed to secure the payment of a certain sum of money in a given time, which William claimed was due him from Eli   We are not informed by the bill, of the nature of the debt; when, or under what circumstances it was contracted; whether it was evidenced by a note or obligation, which was cancelled at the time the deed was given, or remained outstanding; nor as to the value of the land.   By the language employed to describe the debt due from Eli to William, the complainant appears to have meant to suggest a doubt whether Eli, in fact, owed William, and to create the impression that Eli was placed under some kind of necessity, to yield to the claim made by William, and gave him a deed of the land to secure its payment; but she has produced no proof of this, and so far as she has made any case, it depends entirely upon the construction to be put upon the deed and bond.

The condition of the bond recites that William has a deed of a certain tract of land, in the county of Oakland, in the State of Michigan, on which Eli Swetland's family now resides, and that the consideration of the deed, was money due from Eli to William; the amount of which, according to the settlement first made between the parties, was ascertained to be the just and full sum of $747 89.   It then provides that whenever at any time within the term of fifteen years, Eli should pay to William that sum and certain other sums, to be advanced by William, in the manner therein specified,

William was to execute a deed of all his claim, right, title, and interest in the lands, to Eli. This bond bears date the 18th day of August, 1838, and we have seen that the deed was executed and delivered on the 10th day of September, A. D. 1837.

The recitals in the condition of the bond do not assert that there was any debt due from Eli to William, after the deed was delivered; nor does it admit that it was agreed between the parties at the time the deed was given, that the amount of money which formed the consideration of it, was to be ascertained at a subsequent period. It is the fact asserted, that at the time the bond was executed, the amount was ascertained on settlement, that suggests a doubt whether there had not continued to be a subsisting debt due from Eli to William, from the period when the deed was executed, and it imposes upon us the necessity of ascertaining the object of that proceeding.

If the bond had been executed and delivered at the same time with the deed, and these two acts had constituted one transaction, and if there was no other fact appearing in the case, which would illustrate the intentions of the parties, it might be our duty to declare the deed to be a mortgage; for in doubtful cases, Courts of Equity incline to construe a deed with a condition, to be a mortgage. ( 8 *Paige*, 251. ) And if it appeared that the debt due from Eli to William, was not extinguished by the delivery of the deed to William, or that the deed was made for the purpose of securing the payment of a debt, it would be our duty to declare it to be a mortgage. (4 *Kent. Com.* 141.) On the other hand, if the debt which formed the consideration of the deed was extinguished at the time, by the express agreement of the parties; or the money advanced was not paid by way of loan, so as to constitute a debt and a liability to repay it, but by the terms of the agreement the grantor has the privilege of refunding or not at his election, then it must be deemed pur-

chase money, and the transaction will be a sale upon condition.

The bond creates no mutual liability; the obligee is not thereby bound to repay the purchase money, and there is no intrinsic proof of a debt. In Goodman *vs.* Grierson, (2 *B. & B.* 274,) Lord Manners held that a fair criterion by which · to decide whether a deed be a mortgage or not, was by asking, are the remedies mutual and reciprocal, and has the grantee all the remedies to which the grantor is entitled. The same doctrine is sustained in 2 Ed. Ch. R. 144, and in the same case, 6 Paige, 480; 19 Wend., Glover *vs.* Payn, and in Holmes *vs.* Grant, 8 Paige, 250; and see 1 Cruise Dig., by Greenleaf, Tit. 15, Ch. 1, § 15, note 1.

The Vice Chancellor, in Brown *vs.* Dewey, (1 *Sandf. Ch. R.*,) reviews the principal cases upon this point, and arrives at the conclusion that where the personal obligation exists, it may be decisive to show that the transaction was intended as a security, but that its absence is not conclusive, nor is it. a fact that is controlling to establish the contrary. But a contrary doctrine was held in the same case, on an appeal to the Supreme Court. (2 *Barb. S. C.* 34.)

The sum of $600, expressed in the deed as the consideration of it, was a fair price for the land. It was $100 more than was paid for the farm a few years before; and it does not appear that the value of the land was increased by any cause up to the period the deed was executed. The testimony of two of the witnesses shows that it was worth $600. Two others say it was worth from seven to eight hundred dollars, at the date of the deed. The Court says in Brown *vs.* Dewey, (2 *Barb. S. C.* 34,) "that gross inadequacy of price is always a strong circumstance to show that the parties intended a mortgage. On the contrary, if the consideration paid is equal to the fair value of the property conveyed, it is an equally strong circumstance in favor of construing the contract as a conditional sale, and not a mortgage." The Court admits that

Margaret Swetland, complainant, *vs.* William Swetland *et al.*, defendants.

neither adequacy of price nor the want of an obligation to repay the money, nor even both circumstances combined, are to be holden as *conclusive* evidence that a conditional sale and not a mortgage was intended; they say, " both however, are important circumstances in determining the question." See 13 Mass. 448; 13 Pick. 415; 14 Ib. 478. And where the grantor has received the full value of the property, and has incurred no personal liability upon the contract for a re-sale, there should be strong and clear evidence that the parties intended the transaction merely as a mortgage, to justify the interference of a Court of Equity. The decisions upon this and the preceding points are somewhat contradictory, as will be seen by looking into the cases cited by the Vice Chancellor, in Brown *vs.* Dewey, and the cases cited by the counsel of the complainant. In some of the cases, the controlling effect of these two circumstances is denied; at the same time they are in all the cases admitted to be strong, and entitled to great weight. But there is little or no diversity of opinion in the cases in reference to the effect to be given to another fact, which appears on the face of these instruments, viz: that the deed and bond were not executed and delivered at the same time, nor within ten months of each other. The mere fact that the bond was not delivered at the same time with the deed, would be of little importance, if it clearly appeared from the bond or accompanying evidence that the deed was intended as a mortgage, and that the subsequent bond only expressed the contract or understanding of the parties at the time the deed was made. (*Lund* vs. *Lund*, 1 *N. H.* 41; *Marsden* vs. *Babcock,* 2 *Metc.* 103; *Harrison* vs. *Trustees, &c.,* 12 *Mass.* 463; *Kelly* vs. *Thompson,* 7 *Watts,* 401; *Freeman* vs. *Baldwin,* 13 *Ala.* 146; 18 *Pick.* 543.) For a conveyance must be a mortgage if at all, *at the time of its inception.* It never can become one by a subsequent act. If there was ever a moment when it could be considered as an absolute estate, it must ever remain

Margaret Swetland, complainant, *vs.* William Swetland *et al.*, defendants.

so. See authorities last cited, and Co. Litt. 236; 1 Roll. Ab't, 414; Powell on Mort. 6; 4 Mass. 443; 12 Ib. 456; 1 Hill. on Mort. 20. It is only in cases where the intention of the parties does not appear from the instruments or evidence, but is left uncertain, that the difference between the date of the deed and what is called a defeasance, is held by the Courts to have a controlling effect.

In Holmes *vs.* Grant, (8 *Paige*, 243,) a debtor conveyed his farm to his creditor for the amount of his debt, which was about the value of the farm, by an absolute deed, with covenants of warranty, &c.; the creditor gave up and discharged the securities which he held for his debt, and on the same day gave to the grantor a writing to the effect, that if such grantor could find a purchaser for the farm within one year, he should be entitled to all the surplus which he could obtain for the same beyond the amount of the debt for which it had been conveyed, and the interest thereon. It was held that the writing was not such a defeasance as necessarily constituted a mortgage. In this case, the fact that the writing or defeasance, though executed on the same day, was not executed and delivered at the same time with the deed, was held to have a controlling effect in construing the defeasance to be a conditional sale, and not a mortgage. In Kelly *vs.* Thompson, (7 *Watts*, 402,) the instrument that was claimed to be a defeasance contained the clause, " If James G. Sampson pays me $1000, my expenses and trouble in improving the land Sampson sells me this day, I will redeed the same back, if the $1000 with interest is paid me, one year from this date." This deed bore date the 16th of October 1834, the defeasance bore date the 21st of the same month and year. The Court say that " so far from appearing to be one transaction on the face and dates of the papers, they appear to be distinct and unconnected, and unless we go to the extent of saying that when a person has obtained an absolute deed, he shall not, at any distance of time, be

permitted to agree to re-convey on receiving back his pur-
chase money and interest, without being placed in the predic-
ament of a mortgagee, it would be impossible to treat this as
a mortgage."

These cases admit that dates and instruments may be af-
fected, if it is shown that the difference of dates is occasioned
by a scheme or contrivance with a view to give the appear-
ance of an unconnected transaction to that which in fact is
but one transaction, and was in reality, a security for a loan
of money or for a previous debt, but in that case the scheme
or fraud must be clearly shown.    We think that these author-
ities establish the position, that where the instrument of de-
feasance or extrinsic evidence does not clearly indicate that
the transaction was intended as a mortgage, or that it was of
such character as to show that a security only was intended
by a deed, a controlling effect should be given to the fact
that the defeasance or bond was executed at a period so re-
mote from the deed.

The complainant rests her cause upon the assumption that
the facts recited in the condition of the bond, are inconsistent
with the idea that a conditional sale was intended, and that
they establish the fact that nothing but a mortgage could
have been intended by the parties, and therefore no proof
was needed on her part to establish the allegations in the bill,
and none could be received to disprove it.    But after an
attentive examination of the condition of the bond, we are
convinced that the facts therein stated do not necessarily lead
to this conclusion, nor is it strongly influential.    All the facts
stated may well consist with a conditional sale, by which the
complainant was at liberty to re-purchase the land by a re-
payment of the amount for which it was sold to the defen-
dant, including interest, and what defendant might subse-
quently advance to him.    But for the statement in the condi-
tion of the bond, that the amount of the consideration for the
deed, had been ascertained on settlement, we should have

felt no doubt that a re-sale of the land was intended. We have no doubt parol evidence of the circumstances attending the sale might have been introduced by either party to explain the uncertainties in the bond. (4 *Kent Com.* 142.)

When it is considered that a fair price was paid by William for the land; that there is no obligation resting upon the obligee in the bond to pay the purchase money; that the bond was executed and delivered long after the deed was delivered, and that the complainant has entirely failed to prove her charges in the bill, that the deed was intended as a mortgage, and that it was so understood by the parties when delivered; and that it was agreed that the obligee should have the possession and rents and profits of the land, and that she did in fact, continue to occupy the same for any time; and in addition to this, that it is apparent from the bill, that the complainant has neither occupied the land nor endeavored to obtain possession of it for twelve years last past, we think there is no fact remaining to the complainant from which the law will raise a presumption which she can urge in support of her construction of the bond, and that she should not be permitted to establish the charges in her bill by mere inference, whilst she deprives the defendant of the opportunity to explain the transaction by his answer under oath responsive to the bill.

Both of the defendants have answered under oath, but the complainant waived the oath of William to his answer; it is therefore only a pleading which puts in issue the statements of the complainant so far as they are denied; we have already stated in general terms, that the answer of William denies the allegations in the bill, except as to the execution of the deed and bond, which are admitted. We shall, therefore, state only so much of his answer as is responsive to the bill, and supported by proof. He states that Eli Swetland was his brother, and was in indigent circumstances; that he went with him to Michigan to purchase a farm for him, in the year

1834, that he might have a home and be able to support his family by working the farm; that he purchased a farm and took the deed of it in the name of Eli, and in consideration thereof, Eli promised to occupy and improve it, and make it a permanent residence, and repay to this defendant in a reasonable time what he had advanced for him. That Eli totally failed to comply with the conditions upon which this defendant purchased the farm, and to which Eli held the title, and that in the year 1835, Eli abandoned the farm, and refused to have any thing more to do with it, and that on the 10th day of September of that year, he deeded the farm to this defendant, and the deed was intended to be what on its face it purports to be, an absolute deed in fee simple. This defendant denies that any agreement was made in relation to the possession of the farm, or of the rents and profits thereof. He asserts that at the time this defendant purchased the farm for Eli, he also purchased for him a team, wagon and harness, to enable him to work the farm, and after the bond was given, he again paid to Mr. Tuttle for him, the sum of $250 to re-stock the farm. That Eli abandoned the farm a second time, and declared to this defendant that he would have nothing more to do with it; that this defendant placed Mr. Charles M. Orr in possession of the farm, where he has ever since resided at a nominal rent of one dollar per year and taxes.

The answer of Charles M. Orr, is put in under oath. He denies the principal matters stated in the bill, upon information and belief.

William B. Tuttle testifies that William Swetland, one of the defendants, applied to him to buy his farm, and stated to him that he was buying it for his brother Eli. He paid witness $300, and Eli turned out his horses and wagon and harness for $200, the balance of the purchase money. He does not know whether William paid his own money.

Said Charles M. Orr, one of the defendants, was sworn as a witness under an order of the Court, under rule

57. No motion was made either in this or the Circuit Court to strike out this testimony from the record. He testifies that he was present when Eli and William started for Michigan; they both said William was going to Michigan to buy a place for Eli; William let Eli have a team to go to Michigan; that the next fall after the farm was purchased he came to Michigan, and Eli was then on the farm in question, and told witness that his brother William had come to Michigan and bought a quarter section of Mr. Tuttle, and gave him (Eli) three-fourths of it, and his brother Hiram one-fourth. Witness knows that Eli left the farm and went back to Pennsylvania; has heard him say that he had deeded the place back to William, because he had agreed to do so; that he would not stay on the place to have it; has heard Eli and his wife say they would not stay on the place if William would give it to them, and they would never go back to it again.

We think it is established by the answer of William and the proof, that he had endeavored to help his poor relatives, and that he came to this State with Eli to aid him by buying a farm for him, with the intention that he should have a home for himself and family, and not with the intention to permit him to retain or sell the farm as he pleased. But that he was disappointed in his expectation by the return of Eli to Pennsylvania, and his abandonment of the farm. Eli himself appears to have understood that he had forfeited the conditions upon which he was to hold the title to the land, and accordingly deeded it to his brother. It would seem that the land was deeded to William, because he in fact had advanced the $300 and the team which was paid for the farm, and the farm belonged to him, and Eli had forfeited all claim to it. The question did not arise between the parties as to its value, though the consideration mentioned in the deed is one hundred dollars more than the original purchase price; this may have included other advances. To our minds, this

explains the meaning and object of the settlement recited in the condition of the bond.   It seems that Eli's family had returned to Michigan, and he was willing to make one more trial to get a living on this farm; but William was not willing to give him a deed of it, having had more experience of his lack of steadiness of purpose; at the same time he was willing he should have the farm, and have an almost indefinite period within which to pay for it.   The parties proceeded to ascertain the cost of the farm, including interest and expenses, and that amount, together with such sum as William bound himself to advance for another team, was stated as the purchase money.   We think from this answer and the proof, there can be no doubt that a conditional sale was intended by the parties, and not a mortgage.   The fact to which we have adverted, that the complainant and her husband, in his lifetime, have remained out of possession of the farm for twelve years past, that they and their tenants abandoned it, and now that the land has recently enhanced in value, they seek to claim it as mortgagors, insisting that the defendant has received rents, or is responsible for an amount of rents equal to the purchase money, entitles them to very little favor at the hands of this Court.   The proof shows that William was their benefactor, and when they were unwilling to receive the benefits he proffered to them, he allowed another sister and her husband to occupy the land.   And the complainant now seeks to place him in the position of a debtor, and calls him to an account, and insists that he should allow as money paid by her, what his charity had induced him to give to another relative, when at the same time he could enforce no payment from her.   We are, therefore, of the opinion that the complainant has failed to make a case entitling her to the decree she has sought, and that her bill of complaint should be dismissed.