<hr/>

## BROWN v. DEWEY.

B. owed to D. a mortgage of $1100 on his farm, and other sums, in the whole amounting to $1850. B. then conveyed the mortgaged premises to D. in fee, with warranty, for the consideration of $2500, and on the same day, D. executed to B. a sealed agreement, reciting the prior mortgage, the payment of more money since, to the amount of $2500, and the giving of the deed, and declaring that D. bound himself to give to B. a warranty deed of the farm, provided B. performed the conditions of the agreement. D. then bound himself to rent the farm to B. for five

years, for the amount of the interest on the $2500, and B. agreed to put on " *betterments,*" to the amount of $50 per year for the five years. At the end of the five years, D. bound himself to sell the farm to B. for $2800, with a reasonable time to pay the amount ; and to give to B. the privilege of selling the farm at any time, and when D. had received the whole amount, he was to give a deed. The agreement then stated that B. had deposited with D. a note of $200, on interest, signed by a surety, payable to D., and dated in 1838, as security that if D. realized the $2800 from the farm at the end of the five years, then the note was to be of no effect, otherwise in full force.

The mortgage, and other paper of B., except the $200 note, were thereupon given up by D.: *Held,* that the deed was a security merely, and the transaction usurious.

*Held,* also, that upon its avoidance, the debt existing when the deed was given, was reinstated.

The absence of the personal liability of the grantor to repay the money, in such a case, is not a conclusive test in deciding whether the conveyance is absolute, or is intended as a security.

The cases of *Goodman* v. *Grierson,* (2 B. & B. 274,) and *Robinson* v. *Cropsey,* (2 Edw. Ch. R. 138,) examined on this point.

Minutes of decree, reinstating the securities which had been given up.

Albany, July 20 ; New-York, August 22, 1843.

THE bill was filed for the purpose of having a deed executed by Brown to Dewey, conveying a farm in the county of Schoharie, declared to be a security, and to have it given up and cancelled on the ground of usury. The answer, which was on oath, denied that the deed was intended as a security, and denied all the charges of usury. A great number of witnesses were examined on both sides. The facts are so fully stated in the opinion of the court, that it is unnecessary to detail them here.

*A. Becker,* for the complainant, cited

(19 Vesey, 386, 412 ; 1 Powell on Mort. 154—156, and 119. 120, note 1 ; 13 Vermont R. 341 ; 2 Vernon, 84. S. C. 1 Eq. Ca. Abr. 313 ; 2 Cowen's R. 331 ; 9 Wend. 227 ; 3 Hill's R. 99 ; 6 Paige's R. 480 ; 8 Paige, 243.)

*A. J. Parker,* for the defendant.

I. The transaction between the parties on the 27th of January, 1840, was simply a sale of the farm by Brown to Dewey, for a consideration paid at the time, with an agreement to re-

sell at a future day at an advanced price—the resale depending on the election of the original grantor.

The case of *Glover* v. *Payn,* (19 Wendell, 518,) is exactly in point. The deed was not given to *secure* a pre-existing debt, nor on a *loan* of money ; the consideration paid for the farm was, in fact, above its real value—and *Brown contracted no obligation on his part.* He did not *bind* himself to repay the purchase money—or to buy the farm at an advanced price. He only had the *privilege* of doing so.

1. The only *obligation* was on the part of Dewey. The privilege of re-purchasing, was given to Brown, but Brown did not bind himself to re-purchase, or to pay the 2800 dollars, or any other sum.

*Robinson* v. *Cropsey,* (2 Edwards, 138, affirmed, 6 Paige, 480,) and *Holmes* v. *Grant,* (8 Paige, 243,) are also in point.

In the former case, (2 Edw. 144,) the court say that " a fair " criterion, by which to decide, whether a deed be a mortgage " or not, is, by asking :—are the remedies mutual and recipro- " cal, and has the grantee all the remedies to which a mortga- " gee is entitled ? and if, upon a sale under a decree for a fore- " closure, the proceeds should prove insufficient to discharge " the amount, and there could be no remedy over for the defi- " ciency upon any bond, covenant or implied assumpsit, it is " decisive to show the transaction is not a mortgage, but a " conditional sale."    *Goodman* v. *Grierson,* (2 B. & B. 274.)

And in *Conway's Executors* v. *Alexander,* (7 Cranch, 218,) Chief Justice Marshall holds, " If a security in nature of " mortgage is intended, it is necessary that the mortgagee " should have a remedy against the person of his debtor."

And the Vice-Chancellor says, in 2 Edw. 144,—" The only " inquiry necessary to be made is, whether the relation of debtor " and creditor remains, and a debt still subsists between the " parties."

2. The consideration paid by Dewey to Brown for the farm was $2500—and was the full value. Complainant has 28 witnesses to this subject, whose average value is $2637 ·50-100. Defendant has 30 witnesses, whose average value is $2313 53-100, making an average of all the testimony of $2469 83.

In *Holmes* v. *Grant*, (8 Paige, 258, affirmed in Court of Er. rors, Dec., 1840,) the Chancellor says—" If the consideration " paid is about the fair cash value of the property, the fact, that " there was no contract for the repayment of the purchase-money " and interest, which was binding upon the person making the " conveyance, so as to make his general right to redeem as a " mortgagor, and the corresponding right of the grantee *to re-* " *cover back his money,* instead of keeping the land, *mutual* " and *reciprocal,* is a strong circumstance in favor of constru- " ing the contract to be a conditional sale, and not a mortgage."

II. The fact that the $200 note, signed by Elisha and Par- lia Brown, was left in the hands of Dewey, as security that Dewey should be able to realize $2800 for the farm, at the end of five years, does not make the contract usurious.

The note was in fact left on account of the risk of the buildings being destroyed by fire. And it is of no consequence whether the note had been, and was in fact *paid* by the executing of the deed to Dewey; or whether the note still had life, and was to be collected, if Dewey did not realize $2800 from the farm. If the latter, it was payment already made to Dewey to be repaid by Dewey on a contingency. It imposed no further obligation on Brown, but only on Dewey.

To make it a mortgage, or raise the question of usury, Brown should have bound himself to pay the entire sum of $2800. Merely paying $200 in a note, or cash, would not be usurious, because Dewey having the land, might still be the loser by its depreciating in value ; and such in fact is the case here. The proof on both sides is, that the farm is now worth $400 or $500 less than it was in January, 1840, by the depreciation of real estate. It is proved to be worth now not over $2000. Add to that the 200 dollar note, and Dewey has at this time only $2200 of value, for what cost him $2500, and the five years are not yet elapsed.

In *Glover* v. *Payn*, (19 Wendell, 520,) the court say, the contract was not usurious, because Delavan might be a loser to a greater amount than the $1000, by a depreciation of the value of the property.

III. The complainant has no right to allege usury in any

previous transaction between the parties, because all were paid and settled, by the purchase of the farm in January, 1840. (1 Cow. Tr. 259. 1 Rev. Stat. 760.)

IV. If it were otherwise, all usury is denied in the answer, and the answer is responsive to the bill, an answer on oath being required, and there is no proof whatever of usury in any previous transaction. On the contrary, Brown frequently admitted, as is proved, that he paid no usury.

(1 Hoff. Ch. Rep., 291.) The general evidence of a multitude of usurious transactions is not sufficient. There must be distinct testimony affecting the specific instrument.

V. The writing executed with the deed was not recorded at the same time with the deed.

It was not recorded till months after this bill was filed, nor till after it had been made an exhibit, when the objection appeared. (1 Rev. Stat. 746, 2d ed.)

VI. All the testimony of usury in other cases, and also the entire testimony of Parlia Brown, ought to be suppressed with costs.

VII. Even if the transaction of 27th January, 1840, constituted a mortgage, it would not be usurious.

Where the lender incurs a risk of losing his principal, arising from the terms of his contract, there is no usury; where there is a "contingency" or "hazard." *Spencer* v. *Tilden*, (5 Cow. 144;) *Holmes* v. *Wakeman*, (5 Cow. 149, note;) 4 Wend. 679; 17 Wend. 280.

If this was a mortgage, the principal was put in hazard; the buildings might be destroyed by fire—the land might depreciate in value, and there would be no claim on Brown for the loss, as it was optional with Brown, whether to repurchase (or redeem) the farm, at the expiration of the five years.

The lending of money, to be returned on an uncertain event, that may never happen, is not usurious—as upon the return of a ship; or if such an one an infant, shall arrive at 21 years of age. (1 Cow. Tr. 251; Ord on Usury, 24, 25. 39—48.)

THE ASSISTANT VICE-CHANCELLOR.—Prior to 1836, the complainant became indebted to the defendant for borrowed

Brown *v.* Dewey.

money. In the winter of that year, he bought the farm in question, and borrowed more money of the defendant, in order to make the purchase. His whole debt amounting to $1100 at that time, he gave to the defendant a bond and mortgage on the farm to secure it, dated March 9, 1836, and payable in annual instalments, extending ten years. In 1837, the defendant made a further loan to the complainant. In 1838, he discounted for the complainant a note of $200, made by the latter, and also signed by his brother, Parlia Brown, and payable with interest. It is charged in the bill, that all these transactions were tainted with usury. The answer, which was called for on oath, and is responsive to the bill, denies each of the allegations, relative to the reservation and the payment of usurious interest. There is no satisfactory evidence in the case to establish the alleged usury. The defendant's statements to other applicants for loans, intimating to some, and expressing to others, that the complainant had agreed to make him an allowance beyond legal interest, or to pay interest at a certain rate beyond seven per cent.; are not only indefinite as to particular sums, dates and transactions, but are counterbalanced by proof of admissions, made by the complainant, that the defendant had not exacted of him any more than lawful interest. I shall, therefore, assume that the complainant's debt to the defendant, at the end of the year 1839, was valid and unimpeachable. In January, 1840, he owed the defendant from $1800 to $1900, of which $1100 was in the mortgage upon the farm, and $200 in the note above mentioned. For the residue, he held the complainant's personal responsibility only. In that month, the complainant being embarrassed and hard pressed for money, *called upon the defendant.* As to what ensued, except the matters in writing, the parties differ widely. Before going to that point, I will state the written evidence of what occurred. On the 27th day of January, 1840, the complainant conveyed the premises in question, to the defendant in fee with warranty, for the consideration of $2500, and at the same time, the parties entered into a written agreement to the effect following. It recites that the defendant has assisted the complainant to

money, and taken a mortgage for the same farm that the latter bought of Wiltsey in 1836; that the defendant had *paid* to the complainant *more* money since, in all up to that date, to the amount of $2,500; and the complainant had, for the sum of $2,500, given a warranty deed to the defendant. It then declared the condition of the agreement to be that the defendant bound himself and his heirs, executors and assigns, to give to the complainant a warranty deed, free and clear from all incumbrances, provided the latter performed certain conditions therein after mentioned. That the defendant bound himself and his executors and assigns to rent to the complainant, his heirs, and assigns, the said farm *for the amount of the interest on the $2,500,"* for the term of five years to commence the first of December, 1839; and the complainant agreed to put on " *betterments,"* to the amount of $50 a year for the whole term, and at the expiration of the five years, the defendant bound himself, his heirs and assigns, to sell the farm to the complainant, or his heirs or assigns, for $2,800, with a reasonable time to pay the amount; and also bound himself and his heirs, executors and assigns, to give to the complainant, his heirs or assigns, the privilege of selling the farm at any time, provided the defendant received a portion of the amount down, with reasonable time to pay the remainder; then, when the defendant should have received the full amount, he was to give a warranty deed of the farm. That the complainant had deposited a note of $200 in the defendant's hands *for security that if the latter realized the amount of $2800* from the farm at the expiration of the five years, then the note was to be of no effect, otherwise in full force. That the defendant was to receive the annual interest on the money that remained unpaid after *he sold* the farm. The note of $200, which was left in his hands for security, is stated to have been given by the complainant, and signed by his brother Parlia Brown.

At the time of delivering the deed and this agreement, the defendant delivered up and cancelled the mortgage of $1100, and all the notes he held against the complainant except the note of $200 heretofore mentioned, and paid to him in cash, and his own note, the difference between what the complainant

owed to him and the $2500. The interest on the complainant's indebtedness, was computed up to the first of December prececeding, corresponding with the reservation in the agreement. Thus the note of $200 was included in making up the $2500.

The complainant charges, that previous to the conveyance, he applied to the defendant for a further loan, and that he agreed to make it to an extent which, with all the previous indebtedness, would amount to $2500 ; that he would take a deed of the farm for his security for the $2500, and for $300, which he was to receive as a premium for the loan and forbearance during five years. That the complainant was to be the owner of the farm, and the transaction should be kept a secret.

All this is denied by the defendant. As to keeping it a secret, he says that the complainant desired it ; that he did not agree to it, but he remarked that he was not in the habit of talking about his business. It seems that he recorded his deed in March, 1840.

The defendant denies that he agreed to make a further loan, or that the deed was made or intended as a security. He insists that it was absolute and so intended.

The complainant continued in possession of the farm, treating it as his own. He paid the $175 rent, or interest, for the year 1840 ; and he paid that for 1841, partly in money, and partly in the note of a third person. He made "betterments," or permanent improvements on the farm in 1840, to the value of $50; and some in 1841, the value of which was not proved.

The cash value of the farm, at the date of the conveyance, was about $2500. I am convinced that the parties themselves estimated it at $2800, and believed that it was worth that sum. The complainant had refused an offer of $2800 for the farm in the spring preceding, which was known to the defendant.

The important and difficult question in the case is, the nature of the transaction of the 27th January, 1840. Was it an absolute sale, with an agreement to re-sell, or was it intended as a security for the payment of $2800 ?

Let us first examine this question upon the written evidence,

in connection with the facts proved, irrespective of the declarations of the parties.

In equity, the character of the conveyance is determined by the clear and certain intention of the parties ; and any agreement in the deed, or in a separate instrument, showing that the parties intended that the conveyance should operate as a security for the repayment of money, will make it such, and give to the mortgagor the right of redemption. (4 Kent's Com. 142, 2d ed.)

And Chancellor Walworth, in *Holmes* v. *Grant*, (8 Paige, 248,) says, that " as a general rule, where the contract and con- " veyance are made upon an application for a loan of money, " this court, for the purpose of preventing usury and extortion, " will construe it to be a mortgage, whenever the person to whom " the application for the loan is made, agrees to receive back the " money advanced, with legal interest, or a larger amount, and to " re-convey the property within a specified time thereafter, what- " ever may be the form of the written contract ; if it is apparent " that the real transaction was a loan of money."

He used the same language in the previous case of *Robinson* v. *Cropsey*, (6 Paige, 480.)

And it is provided by our statutes, that " every deed convey- " ing real estate, which, by any other instrument in writing, " shall appear to have been intended only as a security in the " nature of a mortgage, though it be an absolute conveyance " in terms, shall be considered as a mortgage," &c. (1 Rev. Stat. 756, § 3.)

Again, " these defeasible purchases are narrowly watched, " and courts of equity lean strongly in favor of the right of " redemption." *Longuet* v. *Scauen*, (1 Ves. sen. 402 ;) 4 Kent's Com. 144, 2d ed. ; *Glover* v. *Payn*, (19 Wend. 518—per Bronson, J. ;) and Chief Justice Marshall says, in *Conway's Executors* v. *Alexander*, (7 Cranch, 218,) " doubtful cases " have generally been decided to be mortgages. The policy of " the law prohibits the conversion of a real mortgage into a " sale." In *Edrington* v. *Harper*, (3 J. J. Marsh. 354,) the court say, " in all doubtful cases, a contract will be construed " to be a mortgage rather than a conditional sale." (S. P. *Secrest*

v. *Turner*, (2 Id. 471 ;) *Skinner* v. *Miller*, (5 Litt. 84.) Carrying out these principles, there is a series of adjudged cases, extending through the last one hundred and fifty years, and which, in my judgment, establish that the deed and the agreement in this case, taken together, amount to a mortgage, or security for the payment of money. I now speak of the writings, exclusive of the evidence *in pais.*

A few of these cases will be adverted to.    *Manlove* v. *Bale and Bruton*, (2 Vern. 84,) is one of the earliest.    There, Bruton had conveyed a church lease absolutely to Bale, for the consideration of £550 ; and Bale, by a sealed instrument, agreed that he would reconvey on Bruton's paying him £600, at the end of a year.    The money was not paid within the time limited.    Bale and his son and heir, who succeeded him, had renewed the lease twice, and nearly twenty years had elapsed since the deed was given.    On a bill by an assignee of Bruton, redemption was decreed against the heir of Bale.

In *Strong* v. *Stewart*, (4 J. C. R. 167,) there was an absolute assignment of a right in land.    It was proved by parol, that the transfer was made on a loan of money, and that the assignee agreed to give time to return the money, and take back the assignment.    It was decreed to be a security and not a sale.

In *Henry* v. *Davis & Clark*, (7 J. C. R. 40,) and *Clark* v. *Henry*, (2 Cow. 324 ; S. C. in the Court of Errors,) there was an absolute assignment of a mortgage, and a written agreement to re-sell it to the assignor.    A parol agreement was proved that the assignee should hold the mortgage absolutely, if it were not repurchased at the time stipulated ; and there was testimony that the assignor had said repeatedly, that he had sold the mortgage.    There was very great inadequacy in the case.    It was held to be a security merely.

*Palmer and wife* v. *Guernsey*, (3 Wend. 248,) is a strong case.    In May, 1829, Guernsey owed Mrs. Palmer a note of $634, besides interest, for money previously lent ; and he then conveyed to her husband, by a deed in fee with full covenants, expressing a consideration of $678,38, certain lands subject to two mortgages, amounting together to $4,300, and by

the deed, Palmer assumed the payment of the two mortgages. Guernsey reserved the possession of the premises till April ensuing. Palmer executed to Guernsey a writing, reciting the deed, and engaging if the land sold for more than enough to pay the consideration expressed in the deed, the two mortgages and his trouble, to pay Guernsey all the overplus. After this, the premises were sold on the foreclosure of one of the mortgages, subject to the other, and brought only $250 more than the mortgage debt on which it was sold. Palmer and wife then brought assumpsit for the balance of the note, claiming for the original money lent. Guernsey offered to prove by parol, that the deed was intended as an absolute sale and conveyance, but the evidence was excluded. The court sustained the action, and decided that the conveyance was in effect a mortgage, and was intended as a security, and that the circumstance of giving up the note, and Palmer's assuming the two mortgages, were not sufficient to overcome the evidence of that intention.

In *Roach* v. *Cozine*, (9 Wend. 227,) R. gave to Cozine, an absolute deed of certain tenements in New-York, on a parol agreement that C. should pay a judgment of $600 against R. and other incumbrances, in all amounting to about $3,900; that C. was to receive the rents of the premises, except a portion in the rear which R. was to occupy two years free of rent; and if R. repaid to C. in that time his advances, C. was to re-convey to him or to a purchaser procured by him. C. was to receive the rents in lieu of interest. The court held it to be a loan of $3,900, and that the deed was no more than a mortgage.

In *Cooper* v. *Whitney*, (3 Hill's R. 95,)which was much like the case of *Palmer* v. *Guernsey*, the court decided that the conveyance was not absolute. Judge Bronson was inclined to consider it a trust rather than a mortgage, there being no covenant to permit a redemption. It may be suggested that the same argument would apply to the idea of a trust, in that case. In the absence of a direction or covenant to sell, there would have to be a resort to equity, to enforce the trust; and no more would be requisite to enforce the redemption, assuming it to be security.

In *Wright* v. *Bates*, (13 Vermont R. 341,) there was a loan of $300, and an absolute deed given expressing a consideration

of $325 ; and a parol agreement that $25 a year should be paid in lieu of interest. There was to have been a written defeazance, but none was made. Two years afterwards the grantor applied for it, but only obtained a lease for the premises at $25 annual rent, and an agreement in it, that on payment of $325 within three years from the date of the deed, he would re-deed the premises. The grantor remained in possession. It was held to be a mortgage against the grantee and the purchaser from him with notice of the parol agreement, who bought after the expiration of the three years. There was great inadequacy in the price.

*Edrington* v. *Harper*, (3 J. J. Marsh. 353,) was a well considered case, and analogous in its features to the one before me. And see *Skinner* v. *Miller*, (5 Litt. 84.)

To illustrate the difference, let us refer to some of the cases where the transaction was held to be a defeasible purchase.

Thus, in *Cotterel* v. *Purchase*, (Cases Temp. Talb. 61,) there was a deed absolute, but intended as a mortgage ; and subsequently a new agreement was made for a further consideration, on which that deed was cancelled, and a new absolute deed was given. After the lapse of 30 years the grantee agreed to permit a redemption. He was then in possession, and continued for sixteen years more, during which no attempt was made to redeem. The court refused to decree a redemption.

In *Floyer* v. *Lavington*, (1 P. Will. 268,) a rent charge of £48, in fee, was granted in consideration of £800, and a condition made in the deed, that the grantor, by paying the £800 *during his life*, might make the grant void. At that time the legal rate of interest was eight per cent. Sixty years had elapsed ; Lord Cowper decided that the rent charge was not redeemable, and relied very much on the fact that it was but £48, while the interest of the money would have been £64.

*Mellor* v. *Lees*, (2 Atk. 494,) which is usually cited on this side of the question, was decided by Lord Hardwicke on its peculiar circumstances, and the great lapse of time, 48 years.

In *Robinson* v. *Cropsey*, (2 Edw. Ch. R. 138, affirmed in 6 Paige, 480,) there was an agreement by which Sharp, one tenant in common, agreed to execute an absolute deed for his half to his

co-tenant, Robinson, in consideration of a debt of about $3,300, due from S. to R. on a stated account, the cancelling of a mortgage against S. which R. had bought, the cancelling of two other mortgages given by S. to R., and the assumption of the payment of a mortgage to one Hicks, which was a lien on the premises. The agreement gave to Sharp the privilege of redeeming the premises within a year, on paying $8,500, without interest. R. was to take the rents, and they were to be considered equivalent to the interest. The consideration stated in the agreement was a little more than the $8,500; the deed was given in pursuance of the agreement in 1819, and Robinson took possession and had retained it ever since. He complied with the agreement on his part, except cancelling the two mortgages to himself, which he claimed to hold under a subsequent agreement of Sharp, as security for money paid by him for S. on a joint liability. Sharp died in 1824, never having offered to redeem, or claimed the right. In 1827, R. filed his bill against Sharp's heirs, &c., to quiet the title, claiming that the conveyance to him was absolute, and not redeemable. It was so decided, and held to be a defeasible sale.

In *Holmes* v. *Grant*, (8 Paige, 243,) on an absolute deed being executed, in consideration of a previous debt, the grantee gave to the grantor a power to sell the farm, and if he found a purchaser within a year, he was to have what he might obtain over and above the amount of the debt, with interest on the same until the sale; but if he should not make the sale, he was not to have the improvement of the farm, if any in value. The notes, &c., constituting the debt, were given up. It was not shown satisfactorily that the agreement was made or given till after the conveyance was perfected. The amount of the debt equalled the value of the land. The Chancellor, reversing Vice-Chancellor Denio, held the transaction to be a sale and irredeemable.

In *Glover* v. *Payn*, (19 Wend. 158,) before cited, Delavan bought of Payn certain premises, for $7,000, in July, 1831, and on receiving a warrantee deed, executed to Payn a writing, demising the premises to him till May 1, 1832, at the rate of $500 per year, Payn paying all taxes and assessments, and insuring

the building for $2,500, and assigning the policy to D.   The writing then contained a proviso that in case Payn on the 1st of May, 1832, should elect to pay Delavan $8,000, then D. covenanted to convey the premises to Payn with warranty. The court held it to be a conditional sale, on the ground that the deed was absolute, there were no previous dealings, and no debt was created by the transaction.   There was no proof of a loan or of an application to lend money.   The case itself was compromised, and it is impossible to tell what would have been its ultimate fate, after the new trial, and a further development of the facts.   The circuit judge decided upon the deed and writing that it was a mortgage; and nothing farther appeared in the case before the Supreme Court.

The perplexity in the case before me, arises from two circumstances, viz., the absence of any covenant on the part of the complainant to pay the $2,500, and the near approach of the expressed consideration to the estimated value of the farm.

Indeed, it was strenuously urged by the defendant that the first circumstance adverted to, was decisive of the case; and in support of this position the authority of the Vice-Chancellor in the case of *Robinson* v. *Cropsey*, was relied upon as conclusive; and *Glover* v. *Payn* was said to sustain that authority, and to be precisely in point here.

If I were satisfied that the want of an obligation or liability on the part of the grantor, to pay the money stipulated for a redemption or a re-sale, was of itself a decisive and conclusive test against construing an absolute conveyance to be a mortgage or security, it would relieve me from difficulty here.   But after an attentive consideration of the authorities, I am convinced that it is not the only criterion, nor one that is controlling.   Where the personal obligation exists, it may be decisive to show that the transaction was intended as a security ; but its absence is not conclusive to establish the contrary intention.

The learned Vice-Chancellor, in *Robinson* v. *Cropsey*, thus expresses his views : " There appears to be a marked test in all " such cases.   If the deed or conveyance be accompanied by a " condition or matter of defeasance expressed in the deed, or " even contained in a separate instrument, or exist merely in

"parol; let the consideration for it have been a pre-existing "debt or a present advance of money to the grantor, the only "inquiry necessary to be made is, whether the relation of debtor "and creditor remains, and a debt still subsists between the "parties? For, if it does, then the conveyance must be regard- "ed as a security for the payment, and be treated in all respects "as a mortgage. *Slee* v. *Manhattan Company*, (1 Paige's "C. R. 56.) On the other hand, where the debt forming the "consideration for the conveyance is extinguished at the time "by the express agreement of the parties, or the money ad- "vanced is not paid by way of loan so as to constitute a debt "and *liability to repay it*, but by the terms of the agreement, the "grantor has the privilege of refunding or not at his election, "there it must be deemed purchase money, and the transaction "will be a sale upon condition," &c.

The Vice-Chancellor relied mainly upon what fell from Lord Manners in the case of *Goodman* v. *Grierson*, (2 B. & B. 274.) As to the case itself, I must say that it goes a great length, and if it had arisen here, I believe it would have been decided the other way. The consideration there, was a charge by will upon the lands conveyed, so that there was no personal obligation previous to the conveyance. Lord Manners says, that it may be a mortgage though there is no covenant to pay, and the absence of a covenant or bond, makes it no less a mort- gage, *if that were the intention.* He recognizes the decision of Lord Talbot and Lord Hardwicke, that every mortgage im- plies a loan, and thus a debt; yet says, that on foreclosure there would be no remedy for the deficiency, if any arose. He also cites with approbation, Lord Hardwicke's remark in *Mellor* v. *Lees*, before cited, that the absence of a personal covenant or obligation, is in these instances a strong circumstance, but if that were the only one, he would not rely upon it to defeat the redemption. Taking all this in connection with Lord Manners, confining his expression, to "*this* deed," and "that transaction," I think we are bound to conclude that he was not laying down a general rule applicable to all cases, but that he intended to apply the criterion of no personal obligation, to the case before him, and to that only. Judge Bronson, in the case of *Glover*

v. *Payn*, considers Lord Manners as holding this circumstance to be "material," not conclusive.

The learned Vice-Chancellor, in *Robinson* v. *Cropsey*, also quotes from the opinion of Chief Justice Marshall, in *Conway's Executors* v. *Alexander*, heretofore cited, in support of the controlling force of this test. But the language quoted is much qualified by the sentences from among which it is extracted, and the opinion does not come up to the point. Thus, the Chief Justice says, speaking of the case before him, " the want " of a covenant to pay the money, *is not complete evidence* that " a conditional sale was intended, but it is a circumstance of no " inconsiderable importance." The decision there, was put upon the ground that there was no pre-existing debt ; no agreement to repay the money ; and no loan or proposition for a loan or mortgage, or conversation about a loan ; and it was conceded, that if there were either of the latter, the case would have been different. Yet, in that decision, the Chief Justice says, " there " are circumstances which nearly balance these, and have in- " duced much doubt and hesitation in the mind of some of the " court." One of these was the necessities of the grantor. The evidence as to inadequacy was deemed too doubtful for the court to rely upon.

*Glover* v. *Payn*, which is said to be exactly in point, has already been stated. In reference to the proposition now under consideration, it does not sustain the criterion set up in *Robinson* v. *Cropsey*. Judge Bronson there concedes, that the case would have been different, if there had been a pre-existing debt, *or* a loan of money, *or* a greatly inadequate consideration. He says, " where there is no debt and no loan," there it is not a mortgage, but an agreement to re-sell.

That the test insisted upon, cannot be decisive, is manifest from this, that it is not a necessary ingredient to constitute a mortgage, that the creditor should have a remedy against the person of the debtor. We not unfrequently see mortgages without any accompanying obligation, or contract, for the payment of the debt. (See 19 Wend. 521—per Bronson, J.)

In the case of *King* v. *King*, (3 P. Will. 358,) Lord Talbot held, that every mortgage, although there be no covenant or

bond to pay the money, implies a loan, and every loan implies a debt, and, therefore, the heir of a mortgagor was entitled to compel the administrator to apply the personal estate to pay off a mortgage on the inheritance, where there was no bond or covenant. *Ancaster* v. *Mayes*, (1 Bro. C. C. 464; S. P. per Lord Thurlow.) And see *Mellor* v. *Lees*, before cited.(*a*)

Most of the cases, in which these transactions were adjudged to be mortgages, were destitute of this feature of personal liability. Such were *Manlove* v. *Bale*, *Strong* v. *Stewart*, *Henry* v. *Davis & Clark*, *Wright* v. *Bates*, *Skinner* v. *Miller*, *Edrington* v. *Harper*, and *Roach* v. *Cozine*, above cited. In *Palmer* v. *Guernsey*, *ubi supra*, the court established a debt, collectible at law, by making out that the transaction was a security. When the deed was executed in that case, the only evidence of personal liability on the part of *Guernsey*, was given up. In *Serier* v. *Greenway*, (19 Ves. 412,) where the contract was held to be a security, there was no personal covenant or liability. In *Wharf* v. *Howell*, (5 Binney, 499,) there was a sealed agreement to reconvey, &c., and the grantee took possession. No interest was to be paid. It was urged by counsel there, that there was no mutuality, no remedy for the recovery of the money ; that all the risk was on the part of the grantee, as from fire, &c. &c. It was held to be a security. Chief Justice Tighlman repudiated the argument that there was no covenant to pay, &c. He said, the objection that there was no remedy for the recovery of the money, was begging the question. A similar position was taken by the court in *Edrington* v. *Harper*, before cited.

In the case of *Holmes* v. *Grant*, Denio, V. C., says :—" It is " not essential that the personal remedy against the mortgagor " should be preserved. There is a debt *quoad* the redemption, " but not in respect to the personal remedy."

And in the same case, on the appeal, the Chancellor makes use of the absence of a personal remedy, only as *one* strong circumstance in favor of construing the contract to be a conditional sale.

(*a*) See *Yates* v. *Aston*, (7 Lond. Jur. Rep. 83 ; 4 Q. B. Rep. 182 ; and 3 Gale & Dav. 351.)

Brown *v.* Dewey.

It may well be, that when an absolute conveyance is made upon a loan of money, or a subsisting indebtedness, and it is declared, either upon the ascertained intention of the parties, or upon grounds of public policy, to be a security only ; the law will in the one case imply a promise to pay the loan, and in the other will continue the liability upon the previous obligation. The case of *Palmer* v. *Guernsey,* before cited, is apparently an authority for this position. At all events, it is well settled, that the existence of a mortgage implies a debt; what the remedies may be for enforcing its payment, is another question.

In fine, it is clear to my mind, that the absence of a personal liability of the complainant, for the payment of the $2500, is not decisive, *per se,* in this case. It is a *strong circumstance,* in the language of Chancellor Walworth ; one *essential circumstance,* as expressed by Lord Hardwicke. In connection with the adequacy of the consideration, it would be controlling with me, were it not for certain other strongly marked features in this case.

One of these, is the reservation *of the interest of the* $2500 during the five years which the complainant was to possess the premises. The rent of the land was worth only about $115 per year. The *interest* reserved was $175. Again, there is the requirement, that permanent improvements to the extent of $50, should be made every year. Another, and strong feature, is the keeping the $200 note, as security that the defendant should receive $300 at the end of the five years, in addition to the $2500, and the interest thereon. This is proved by the agreement. The explanation of the defendant in his answer may be true, but it is not evidence.

These circumstances fully rebut the inference arising from the inadequacy of the price, as well as the want of a personal liability. I think the parties considered the farm to be worth $2800. We are to look for their intentions in the state of things at that time ; and it is improbable that they then expected a general depreciation in real estate. They sedulously guarded against dilapidation, or particular diminution in value, by the provision for "betterments" to the amount of $250, during the five

years. For this, and for the annual interest, the complainant was personally liable. And in addition to both, the defendant retained the note of $200 against the two Browns, which with simple interest from its date, (1838,) would at the end of the five years from 1840, amount to nearly $300. The defendant thus had obligations for the payment of $550, besides that for the payment of the interest on the $2500. The farm itself would, doubtless, have been a scanty security for the $2500. With this we have nothing to do, except as one circumstance from which to argue intention. And here we find that circumstance obviated by the provisions which have just been examined.

The parol evidence of the intention of the parties is not very conclusive. The defendant is shown to have called once or twice upon the complainant, not for rent of the farm, but for *interest* on the money. Beyond this, I need not advert to the oral testimony on the subject.

Upon the whole, I have, though with some hesitation, come to the conclusion, that this transaction was intended as a security for the payment of money, and not as a sale. In *Chapman's Administratrix* v. *Turner*, (1 Call's R. 280, 286,) Roane J., says, " As the line of discrimination between mort-" gages and these defeasible sales cannot well be marked out " by any general rule, every case, as to the true nature of the " transaction and the intention of the parties must, in some " measure, be determined on its own circumstances." He then says, that the intention to make a conditional sale must be *clearly proved* or *necessarily implied* from attending circumstances, or the general rule authorizing a redemption, will not be departed from.

Here I do not find clear proof that a sale was intended, and the implication from the attending circumstances, is manifestly against that conclusion. This leaves the general rule adopted in these cases to apply with full force. The rule may occasionally operate harshly, and do injustice; but no one can doubt its benign equity, or its soundness as a principle of public policy. And although it has usually been enforced to establish a redemption and save the borrower from rapacity and extortion;

Brown v. Dewey.

the same fixed principles of construction, require its application when the lender is thereby made to suffer the loss visited by our statute upon usurious contracts.

The defendant makes a point, that if the transaction constituted a mortgage, it is not usurious; because there was a contingency or hazard in the security, by which he might never be re-imbursed. I have commented upon the provisions made in the agreement to prevent any hazard of loss from the near approach of the amount of the loan to the value of the premises. There being a personal obligation for the interest, and a considerable amount in addition; the contract is no more hazardous than many loans which daily come under our observation; indeed much less so, than loans generally upon mere personal security. I do not think that the case comes within the principle of the authorities referred to by the defendant.

The reservation of the sum of $300, to be paid at the end of the five years in addition to the principal and annual interest, renders this transaction usurious, and it is therefore void.

The avoidance of the deed and contract of January 27, 1840, includes all the acts which were consequent upon their execution, such as the cancelling of the mortgage of $1100, and the other paper then held by the defendant. And he must be restored in regard to those securities, so far as this court can restore him, to the position in which he stood previous to the loan on that day. The complainant is entitled to a decree upon these principles, and to his costs of the suit.

### MINUTES OF DECREE.

The decree declared that the deed was intended as a security for the payment of money in the nature of a mortgage, and that and the defeasance is usurious, &c.; and directed the deed of 27th January, 1840, and defeasance be delivered up to defendant, to be cancelled, and the defendant to deliver a conveyance in fee by way of release, duly acknowledged and subject to the mortgage of $1100.

Declared the mortgage of $1100, and note of $200, given by complainant and P. Brown and the other demands, which defendant had on 27th January, 1840, valid.

That all such demands on that day amounted to $1850, bearing interest from that date. Complainant entitled to have all his payments since; for rent, interest, or otherwise, applied rateably on the mortgage, the note and the other demands.

Complainant on receiving the deed, &c., to deliver to defendant the bond and mortgage of $1100, or if destroyed, a new bond and mortgage of same date and tenor; the mortgage to be acknowledged and indorsed with a reference to the old mortgage and its record, and also with a statement dated 27th January, 1840, that the principal and interest unpaid thereon, was at that date $1200, and no more.

That the clerk of Schoharie, on production of the decree, may enter in the margin of the record of the $1100 mortgage, and of the satisfaction thereof, that by the decree, (referring to it,) the satisfaction is vacated and the mortgage declared to be a legal, valid and subsisting security, without prejudice to incumbrancers or purchasers of the premises in good faith, whose rights accrued after the entry of such satisfaction.