Judge Ewing
delivered the Opinion of the Court..
Bright, the son-in-law of Taylor, received from him, on loan, a negro boy, and after remaining m possession of him, for more than five years, on the 20th of December, 1830, made a contract with Wagle, and executed the following writing:—
“ Know all men by these1 presents, that I, Jacob “ Bright, of the county of Rockcastle, state of Kentucky, “ hath this day bargained and sold unto Isaac T. Wa- “• gle, of the county aforesaid, one negro boy named “ Daniel, for, and- in consideration of the sum of one “ hundred and fifty dollars; the receipt is hereby ac- “ knowledged. And it is further understood, that said “ Bright is to have the1 right of repurchasing said boy, by ‘‘ paying the aforesaid sum by the 4th Monday of March “ next, together with twelve per cent. on the amount, as wit- “ ness my hand and seal, this 20th December, 1830.”
“Jacob .Bright.,, (Seal.)
K N. B. The negro- aforesaid is to remain in the posses- “ sion of said Wagle.”
Which said instrument was assigned, on the same *253 day, by Wagle to Elkin,- and the negro boy delivered to him.
Equity will consider any writing by which property is transferred, as a mortgage, rather than an absolute sale,, ifthe intent is doubtful.
Whenever aconusury, parol evisjbieVshow'its tru® thatthere^wasa loan’ and.a con~ veyance of property to secure it, *kecitreated Was a mortgage or may be its lan- — Though a writing may purport upon its face to be an absolute, or a conditional, sale: if it was obtained by any fraudulent device, or upon a usurious contract, or was really intended as security for a loan; and any such facts are charged by bill in equity, and proved-and they may be proved by the defendant’s express admission, and will be taken as admitted, if he evade the charge, or only gives a general response to Specific allegations ——the writing will be treated as a mere mortgage, or evidence of a pledge.
*253 The time elapsed, and the money was not repaid by Bright; and Elkin, recently after the time had elapsed, started off with the boy in the stage, as Bright supposed, to make sale of him. Bright followed him, and got the boy in possession, and took him to Taylor, who claimed the right to keep the property, and refused to-surrender him to Elkin. Whereupon, Elkin sued him, in detinue, and recovered judgment for the boy.
Taylor and Bright then filed their bill in Chancery* with injunction, praying to be permitted to redeem the boy, alleging that the transaction between Bright and Wagle, was a pledge or mortgage, for the loan of money-
Wagle and Elkin are made defendants, and rely upon said writing as a conditional sale, with a right of repurchase, by repaying the sum advanced with twelve per cent, interest, at the time stipulated, and as he had not done so, the boy absolutely belonged to Elkin.
The Circuit Court dismissed the bill, with ten per cent. damages; and the complainants have appealed to this Court.
It is often a nice and difficult question, to determine whether an instrument of writing is a mortgage or pledge, or a conditional sale. Courts' of equity have uniformly shown a strong leaning in favor of giving to them, the former character, rather than the latter, in all doubtful cases. And whenever a transaction is shown to be infected with usury, or fraud and oppression, or an unconscientious advantage has been taken of the necessitous, they have invariably indulged in the admission of evidence, to show that its real character is different, from what it imports to be on its face.
Hence it is established as a general rule, in all such cases, that when there has been a loan of money and . . • a conveyance intended to secure it — whether this appears on the face of the instrument itself, or by other extraneous, but satisfactory, circumstances — it is always construed in equity, a mortgage or pledge, and redeemable, though the redemption be confined by agreement to a particular time, or three be an express stipula *254 tion against the right of redemption, 5 Lit. Rep. 86; 3 J. J. Marshall, 354; Butlers note to Coke Lit. 205. a. 1 Vernon, 190,-192.
Whenever it is shown by the proof in the cause, or by the confession of the defendant, in his answer, or by his evasive or general response to specific allegations in the bill, that the instrument of writing, though absolute on its face, or bearing the stamp of a conditional sale, was obtained by fraud or mistake, or imposition on the grantor, or was intended to cover a usurious transaction, a Court of Chancery will not only hear such proof, but will seize hold of it with avidity, as a justification for giving to the instrument the character of a mortgage or pledge, and allowing to the oppressed grantor, the privilege of redemption.
The bill of the complainants contains the following distinct charges:—
That Bright, being in want of money, borrowed of Wagle one hundred and fifty dollars, and executed the instrument above mentioned, to secure its repayment.
That said writing was intended to be a mortgage, or lien to secure the repayment of the money, which was to be repaid by the ensuing March, with interest at therate of twelve per cent, per annum.
That the boy was worth three hundred and fifty dollars at least, and he believes he could have sold him to Wagle for that sum, but he was unwilling to sell him for any price, and so informed the said Wagle, at the time of said loan.
That said Bright now believes that afra/ud was intended in drafting said writing: that he was ignorant of the difference between mortgages and conditional sales, and executed it in full confidence that it was nothing more than a mortgage or lien on said boy; and if it is to have any other' effect, he avers most positively, that it was a fraud on him.
That he was hard run for money; expected to be ready at the day, but was disappointed; and met with Wagle on'the next day, who claimed the boy absolutely, and said that it was usual for men to keep advantages when they got them, and as he thought he had the advantage *255 he intended to keep it. That he was soon after informed that Wagle had disposed of the boy to Elkin, and he intended to run him off a.nd sell him. That he persued him, brought the boy back, and delivered him to Taylor.
^®r®dfa®*s a¿® wi'thm the knowledge of a defendant in chancery, or, from circumstances, they mustbe presumed to he within his knowledge, and he answers by evasive or in general terms, they may be taken as confessed, against him. Thus, where a party contracted by an agent who was living with him, and who could, and did, consult him during the progress of the agreement, he is presumed to know all the facts and circumstances relating to it; and so far as they are charged, and not specifically denied by him, they are taken as true.
Though both of the defendants put in their answers, they leave entirely unanswered the above specific allegations in the bill, except that the said Wagle answers, in general terms, that he bought the boy as agent for Elkin; and Elkin answers, in terms equally general, without interposing any denial of his knowledge of the whole transaction; that Wagle, as his agent,purchased the boy? and that no mortgage was spoken of, or intended, between the parties at the time, but the transaction was fair and bona fide.
These general responses to specific allegations are wholly insufficient. No answer is made to the charge, that the money was loaned, t the rate of twelve per cent, interest; that the writing was given as a lien to secure its repayment; that the boy was worth three hundred and fifty dollars, and Bright refused to sell him to Wagle at any price, and so informed him, at the time of the loan. Or to the charge, that Bright applied to Wagle, the day after the money fell due, and that he acknowledged that he had got the advantage, and would keep it.
If these specific allegations, being unanswered, or answered evasively, or in general terms, can be taken as confessed against the defendants, there can be no doubt that such construction should be given to the transaction, as to allow the privilege of redemption.
That they should be taken for confessed, against Wagle, who was privy and participated in the whole transaction, is unquestionable; and we regard it pretty clear, under the circumstances of this case, that they should be taken as confessed against Elkin.
When facts are charged to be in the knowledge of a defendant, or may be presumed to be within his know *256 ledge, and he fails to answer, or answers in general or evasive terms, they may be taken as confessed against him. We think that, without any unreasonable'stretch of presumption, the facts charged in this bill, may be presumed to be within the knowledge of Elkin. The loan was effected, and the arrangement made by his confidential friend and agent, who lived with him, was trading for him, had been, if he was not then, his partner in business; and Elkin’s money advanced to affect it.
Where a defendant in chancery admits the allegations of the bill, or puts in no answer, or, answering, fails to notice any material allegation — . proof contradicting the allegation thus left uncontroverted and not put in issue, ia utterly unavailing.
That Elkin came up about the time the arrangement was completed; first objected, but afterwards, upon the explanation of Wagle, assented to the arrangement. It appears also, by the deposition of Wagle — taken at the instance of Elkin, and which abounds, on cross examination, in the most striking evasions and contradictions — that though he insists in one part of his deposition, that he bought the boy as agent of Elkin, and with his money, in another part, he confesses that he got two hundred dollars, or three hundred dollars, from Elkin, for him. From all which, it seems to the Court, that there was a privity, unity of interest and combination, between Wagle and Elkin, to take an undue advantage of Bright, in his laboring circumstances, and to impose on him, an unconscionable bargain; and the bill should have been taken for confessed against both of them.
It is true, that an attempt is made to prove by Wagle, and the draftsman of the writing, but who was not present when the contract was agreed on, that it was a conditional sale, and not a mortgage. But parol proof, counteracting the confessions of a defendant, to facts charged in the bill, cannot be available. A volume could not avail to rescue a defendant from the effects of his confession, arising from his failure to put in an answer. And it would be equally unavailing to save him from the effects of his failure to notice or respond to material facts charged.
We are the less reluctant to come to the conclusion which we have, upon the bill and answers, when we look into and scrutinize the instrument of writing in connection with the value of the boy. Though the writing, in *257 dependent of extraneous circumstances, by the adoption of the word repurchase, instead of the word redeem may, strictly, be termed a conditional sale, yet it bears upon its face evident marks of a contrary intention.
A stipulation, in the sale of a slave, that the vendor might repurchase by returning the money with 12 per cent.interest,and a note at the foot of the bill of sale, that the slave should remain with the purchaser, held to be strong indications that the contract was a loan and pledge.
Inadequacy of price, a circumstance indicating that a contract purporting to bo a conditional sale of is slave, was, in fact, only a pledge to secura a loan.
Twelve per cent interest is reserved — a stipulation usually attending the usurious loan of money. If a sale and bare right of repurchase was intended, it is most probable that a specific sum would have been fixed as the price of repurchase. There is an express stipulation introduced in the form of nota bene, that the negro was to remain in the possession of Wagle. If the minds of the parties were not running upon a loan, and a mortgage, pledge or lien upon the slave, to secure it, why the introduction of this stipulation? If it were a sale, and so intended by the parties, no reasonable man could doubt, but that the property and immediate possession thereof would pass to the vendee, without any special stipulation to that effect.
Besides, the property is proven to have been worth more than double the amount advanced. If it were a sale, the price given, would, it is most probable, have borne some reasonable proportion to the value of the property, especially when a young boy slave is the subject of traffick, which, it is well known, will readily command in cash, at all times, his intrinsic value.
It is therefore decreed by the Court, that the decree of the Circuit Court be reversed; the cause remanded* and a decree rendered, allowing the complainants to redeem said boy, upon repaying the principal advanced and legal interest thereon, after deducting therefrom the hire of the boy while the defendants had him in possession, and the costs of the suit in Chancery, and that the injunction against the judgment at law, except the cost3 therein, be perpetuated upon the payment aforesaid.